Thank you, Your Honor. May it please the Court. I'm Mark Freeman for the United States, and I'm going to aim to reserve three minutes for rebuttal. There are several basic problems with the District Court's judgment against the United States in this case, but this morning I'd like to focus on two. The statute of limitations and the discretionary function exception. On the statute of limitations, Section 2401B basically asks two questions. Was it certified or registered mail? And what was the date of mailing? In this case, the District Court said in its four-page order rejecting the government's limitations defense that, quote, the government sent the notices by certified mail, but did not obtain a postmark from the Postal Service to establish the date of mailing. He doesn't give us any findings of fact that would establish that it was sent by certified mail. Like, he followed, the government followed the directions of one of these two manuals. So we've just got the wrong statement. He sent it by certified mail. Right. I mean, we also have a tremendous wealth of factual evidence in the record that the government sent. But Judge Fletcher's point, I think, is that there were no factual, jurisdictional factual findings. I guess that's right. I mean, unless you I mean, in part of your brief, you suggest at one point the court, if it has any doubt about what happened here, to send it back for factual findings. Yeah. I mean, look, there's no question that the District Court here committed legal error in adopting a rule about when the FTCA statute of limitations is available to the government. And he says, you know, because we didn't have this optional postmark sender's receipt that it's, quote, inapplicable as a matter of law. I mean, that's just wrong. Hold on. Before you chastise the District Court too much, let me ask you a few questions. I want to, in this particular, as I understand it, the notice of determination was mailed to the lawyer's office. It was actually mailed to both, Your Honor. To the individual. To the individual claimants and to the lawyers. That's news to me. I couldn't figure, I didn't. Oh, that's it. It's in the government's excerpts of record. There was a beginning in the affidavits that begin on page 353. The only notice that was required was the one section. When the recipient received the notice, if you read the letter that was contained in the envelope, it has a date on it. Yes. Right? Yes. The content of the letter doesn't say this is the date of mailing, correct? Well, it says at the top like an ordinary letter does. No, but that doesn't necessarily mean that that was the date that was placed in the United States mail. Oh, that's correct. No, I agree with that. There's nothing in that letter that says that, right? Well, no. There's a date at the top, but that doesn't say this was placed in the mail. Okay, now if you look at the envelope. Yes. What do you see on the envelope? You see the date August 5, 2002. There's an example of this at page 357 of the government's excerpts of record. 357. Yep. And you'll see that's an example of a letter that was returned to us because one of the individual claimants never picked it up. So is the envelope actually stamped with the postmark? Yes. Now, plaintiffs, I know, are going to stand up and say that's not an official U.S. Postal Service postmark. That's technically true. It was a metered mail mark put on by a Pitney Bowes machine that BLM operated under license from the Postal Service. But if you look at the thing, it says August 5, 2002, and it says on it certified mail. Now, we have in the record the declaration of the Boise Postmaster who says these are certified mail, and they could not have been mailed later than August 5, 2002. Let me ask you this. The district court didn't seem to focus on this timing issue. It seemed to be saying that it's not certified mail as a matter of law. So one of the questions, because it didn't have this postmark receipt, is this a factual issue or is it a legal issue? I'm sort of struggling with how to characterize this question. I agree that the district court's order, and this is beginning at page 190 in our excerpts of record, is a little unclear. It's a four-page order. But what I think he seems to say, our understanding, is that it's a ruling as a matter of law about what Congress wanted in the FTCA in Section 2401B. Because he says, look, the government sent it by certified mail, but you didn't obtain a postmark. And then he says, the question then is for me to decide whether Congress anticipated, when it said certified mail, that you would get a postmark in order to establish the date of mailing because that's the critical date for statute of limitations purposes. And I conclude that as a matter of law, you did need to have this optional postal receipt. So it seems to us that it's a holding about what the FTCA requires. Okay. So if I look at that statute and it says certified mail, nothing else, opposing counsel is pointing to the domestic mail manual, which I guess is aimed at customers, and POMS, I think, is aimed at postal employees. Yes, that's an internal manual. Internal manual. And says, well, if it doesn't, if the piece of mail doesn't comply with these specific requirements, then it's not valid certified mail. And they have the former post office person, postal master, saying, yes, it's not valid certified mail. Is that a legal question, whether it's a valid certified mail, or is that a factual issue? We think on the threshold it's a legal question. It was sent in compliance with certified mail regulations, and I'm happy to address those points, including the declaration of the former postal official. But on its face, it's a legal question about what the certified mail regulations mean. But if there's any question about that, then certainly we would then go to a factual question about what the Postal Service understood. I mean, after all, certified mail is actually a trademark term of the U.S. Postal Service. It doesn't have any external meaning other than what the Postal Service defines it to be. And, you know, we have two declarations from senior Postal Service officials saying this is certified mail. So if as a matter, if the court is not convinced it is a matter of law, this was certified mail. And, again, their reliance on those regulations is just wrong for the reasons in our brief. But if there's any question about it, then there's at least a factual dispute. And I would point out that the postmaster in Boise, Idaho, in his declaration, which begins at 388 of the government's excerpts, it's really quite persuasive, responds to the declaration provided by plaintiffs in the district court and explains why that's wrong. How was this all raised? Was this raised on a motion to dismiss under 12b-1? Yes, it was raised in a motion to dismiss. But the district court didn't make jurisdictional findings, correct? Well, no. And I'm having trouble just with that term because, I mean. Well, sometimes, like the easy example is like somebody who, you know, the court doesn't have impersonal jurisdiction. You make certain factual findings and all that. Yes. And he didn't do that. No, he didn't do that here. And, in fact, I mean he refused to consider the supplemental evidence that we. He could have reserved all that and at the time of the trial he could have made factual findings. Yes, and he didn't. In his final conclusions of law and findings of fact as to the government, he just refers back to his earlier order saying, I've concluded that because you didn't have this postmarked receipt it was timely, or rather I should say in the court's view the statute of limitations has never begun to run. But you would agree, wouldn't you, that somebody who is a recipient of a notice from an agency, a government agency on a tort claim's determination that either the letter or the envelope has to reflect the date of mailing? Yes, and here both did. I mean, surely there is no requirement in the FDCA that we, before the date on the letter say this is the date of mailing. If you get a letter that has a date on it, you assume that's the date of mailing. That may not necessarily be the case at all. It may not be the case. I'm not contesting that. It may be that, you know, you wrote the letter and you dated it one day and didn't send it for a few days. You know, in Marley we interpreted this jurisdictional, this time period. Yes. It's purely jurisdictional. Absolute's got to be met. And so part of that means that the agency has to notify with a clear date of when the date of mailing. And here we have, I just want to be very clear about this. We have, every one of the claimants here and plaintiff's attorney received an envelope with August 5, 2002 on the outside of the envelope containing a letter dated August 5, 2002. The letter said it was sent by certified mail. On the outside of the envelope was a certified mail barcode from the Postal Service and that the letters were tracked by the Postal Service. We have their computerized tracking records. That's something that only happens for certified and registered mail, not for first-class mail. And we have the declaration of the postmaster saying they were available for pickup by plaintiff's counsel, according to these computerized records, at 11.04 a.m. on August 6. And it was not possible for those to have been mailed any later than August 5 as a result. So what do we make of the fact that apparently the government was a little bit sloppy and didn't completely fill out this form that's supposed to come and be given when you're doing a bulk mailing of certified mail? Yes, that's the Form 3877. A few things on that, Your Honor. The first is that whether we filled it out correctly or not is a disputed factual question, and the district court never reached that. So we want them to determine that as being something that's critical? If they didn't fill it out completely and correctly, then it wouldn't be certified mail? No, and that's obvious. That's the second point. That's not true. Our declarants make this point. I mean, look, if you send a letter and you forget to put on the zip code, the Postal Service delivers it anyway. The domestic mail manual says you have to put on a complete address. That's obviously still first-class mail, and that's what our declarants say, is that you pay the postage, the Postal Service accepts, processes, handles, and delivers it. It doesn't affect the classification of the mail, and we wouldn't want any other rule. I mean, there are countless federal agencies and requirements for mailing that we wouldn't want, and the government doesn't want to contest, you know, if a taxpayer files their return and we say, well, you know, you didn't put on the exact right address, so it wasn't first-class mail at all. I mean, the Postal Service expressly disavows that interpretation, and of course it would make no sense to have that rule. Now, we've got two competing affidavits from different postal employees with years of experience. Yes. And one of them says this wasn't certified mail because things weren't complied with. Right. Now, does the district court have to evaluate these two affidavits and determine which one is correct as to an expression of the law? I would think that we'd start with the regulations, and then we'd start with the federal agency's construction of its own regulations. This is not a question in which the evidence is entitled to equal weight. The United States Postal Service, which writes the regulations for certified mail, says this was certified mail, not just the Postmaster. I mean, the Postmaster we put in because that's where this was, but we have in the declaration the Mera Declaration. Even though the government might have been terribly careless and only completed half of the boxes it should have filled in? Yes, it is the case, Your Honor, and let me actually address that because it's important to understand what this form is, this Form 3877. This is your receipt. I mean, it's the equivalent of the part that you rip off on the Form 3800. The Postal Service doesn't collect the form. They don't use it for any purpose. It is often called colloquially a logbook, and that makes sense because that's what it is. If you're a corporation, you send a lot of certified mail, you keep track of the ones that you send. If you don't fill it out correctly, the result is that you don't have a very good receipt. But nothing says that what you've sent is not certified mail. If you paid the postage for certified mail, the post office picks it up and delivers it as certified mail. It's certified mail. You may not have a correctly filled out receipt, but it's still certified mail. And what plaintiffs cannot point to because it doesn't exist is anything saying that if you fill out this form incorrectly, the classification of the mail is taken away, and both of the Postal Service declarants said that that's false. I would also add in response to Judge Fletcher's question regarding the declaration that plaintiffs submitted. That declaration just is an order of operations here. That declaration was submitted before the postmaster's declaration. And one thing that's interesting, if you look at the last page of that declaration, the real reasoning about why the plaintiffs say this couldn't have been mailed, it had to have been mailed on August 6th, was that in Boise there's usually a 99% turnaround overnight. And so since plaintiffs received the letter on August 7th, it was probably mailed on August 6th. But as the day declaration makes clear, in fact, the letter was available for pickup with the notice that's placed in the PO box on August 6th in the morning, which means by the reasoning of their own declarant, it was mailed on August 5th. So this is, again, I just want to make clear, if it's not certified mail, I don't know what this was. It was picked up by the Postal Service, handled, processed, delivered, tracked as certified mail. It certainly wasn't first-class mail. And I have never seen a statute of limitations presentation of the evidence in which we have personal declarations on personal knowledge of every person who touched these things, beginning with the person who wrote them, through the mail handling people, through the mail carrier, through the postmaster, all of whom say on personal knowledge it was certified mail and it was mailed no later than August 5th, 2002. Now, if the Court believes that there are factual issues that have to be addressed on this question on remand, then so be it. We think the evidence is so persuasive that that's not necessary. But if a remand is necessary, then fine. But the District Court's reasoning here that as a matter of law, the FTCA requires some kind of optional receipt, never mentioned in the statute, is, we think, transparently incorrect. I would reserve the rest of my time. You were going to address the discretionary functional. Is that an affirmative defense or is that jurisdictional? It's jurisdictional. And this Court has said it's jurisdictional repeatedly. The Turbush case makes this point. Now, the Court says it's the government's burden to prove it, and we're not taking issue with that. But it is a 12B1 dismissal ground. And on the discretionary function exception, just give one sentence, take a step back here. This is not a case of routine maintenance failure. It's not ice in a parking lot. It's not mold in a refrigerator. This was the agency was faced with a problem. Idaho was literally burning. It was burning with catastrophic wildfires that were fueled by an invasive species of grass. And the agency took very seriously its obligation to decide what to do about this. It thought we could allow the risk of catastrophic wildfires or we could use a potent herbicide of known risks to try to prevent those catastrophic wildfires. And in the record, there is explicit evidence that we made that judgment call in awareness of the risks. On page 270 of the government's excerpts of record, the agency found, this is the final page of the record of decision of our environmental impact statement. We said, look, we recognize that there are risks here, and we recognize that in authorizing the use of herbicides, we are acknowledging the possibility of environmental damage. We think the risk-benefit calculation warrants this decision. That is exactly the kind of decision that the discretionary function exception is designed to protect. A choice between two, a binary choice between two options, each of which is weighted with substantial policy concerns and risks. And it is exactly that kind of difficult affirmative choice by an agency that the exception exists to protect. By a mandatory obligation to prepare an EIS? This is the NEPA question, and respectfully, we think the NEPA question is a red herring, and let me explain why. NEPA only applies to discretionary agency judgments. This Court and the Supreme Court have both said, if the agency has no substantive discretion, you don't do a NEPA analysis because there are no alternatives to evaluate. So plaintiff's reliance on NEPA just underscores that this was the kind of discretionary judgment that the agency had. But that's kind of begging the question. Was there a mandatory obligation to comply with NEPA? Yes, in a sense. If we had not done a NEPA analysis at all, it would have been, I think, arbitrary and capricious. The Court would have said it's arbitrary and capricious under NEPA. But that's the most that could be said, which is to say, you abused your discretion by not evaluating particular risks. And that's what the District Court said here. In this Court, in the Turbush case, for example, there was a mandatory park manual the plaintiff cited, and the Court said, well, yeah, it's mandatory that you do what's in that manual, but what the manual called for were discretionary judgments. And so that doesn't take away the discretionary function section. This is the same thing. Well, not necessarily. If there is a mandatory obligation to do an EIS, then there's no discretion. Well, if it were mandatory and specific as to the conduct alleged to be tortious, and on that question, this Court has held, if an agency determines it doesn't have to do an EIS, that may be wrong. The Court may reverse it. But you reverse it under the APA on the ground that it's unreasonable because the NEPA doesn't tell you what risks to evaluate. It doesn't tell you how to weigh those risks. Agencies have to make those judgments. So I looked at the various plans for the, I think they were called the FIRE. And some of them called themselves EAs, and some of them said, we've decided that we don't have to comply with NEPA. Was there a – I wouldn't put it that way. Determine the proposed project is in conformance with an approved land use plan and no further environmental analysis is required. So is it your position that the government did do some determination as to what level of NEPA compliance they had to do on every site? Yes. Let me rephrase. The EIS specifically contemplated, and I forget the site, but it's in our brief, that an EA would not be required for every site. We ended up doing EAs for the sites, but generally the ones where we were acting affirmatively before there was a wildfire and then the ones where we had to act quickly before the cheatgrass took root. We said, look, the EIS said you didn't have to do an EA every time. It's reasonable to act with urgency here. NEPA doesn't tell you with specificity every time you have to do an EA, you have to do a site-specific analysis, and our judgment was under NEPA that this was adequate. Now, the district court disagreed with that, and we're not here to argue the merits of that. But, again, this court, under its jurisprudence of NEPA, would review that decision for reasonableness. You would say, was it reasonable for the agency to believe that it didn't have to do an EA for every site? And it may well be that the court would have held that that's unreasonable, but the point under NEPA is in NEPA you could set that aside in an APA action. But this is a tort suit, and plaintiffs have to show more than that it was unreasonable or that it was arbitrary and capricious. They have to show that we had no discretion at all. And in the conduct that we did, that we had no discretion to use oust. And because NEPA only applies to discretionary agency authority, the outcome of a NEPA case is not you had no discretion in the first place. The outcome of a NEPA case is you abused your discretion. And under the APA we can set that aside, but it's not enough to get a tort judgment. That's why we believe that this is the NEPA question here is really a red herring and why, by the way, no other court of appeals has ever ruled on this. I mean, NEPA has been around forever, and so has the FTCA. There's a reason this has not come up. It's because NEPA does not affect the final substantive decision of the agency. And I would just point out, I mean, there's some great testimony on page 222 of the government's excerpts of record. This is Joe Russell, who is a BLM fire officer, and he was asked, why did you spray this stuff near plaintiff's farms? I mean, why would you have chosen there? And his answer was, because it's near farms. His answer was, we were trying to prevent catastrophic wildfires that would harm private property and destroy sensitive ecosystems. We thought this was the best way to go. We thought that the risks were worth the benefits. Now, plaintiff's basic argument in this case is that we miscalculated. Maybe we did. I don't know. But that's exactly the kind of judgment that the discretionary function exception protects. I mean, just in its text, it says, is it a claim based on the failure to perform or performance of a discretionary duty or judgment and whether or not the discretion involved be abused? And that's this case. Okay, thank you. I'll let you go. Thank you for your time. Hear from the plaintiff. Good morning, members of the Court. My name is Steve Anderson. I represent the plaintiffs in this case, who are the Idaho sugar beet, grain, and potato growers. I'd like to begin, Your Honor, by referencing a couple of things that I think are important to keep in mind as far as this appeal is concerned. First of all, despite everything said by the government in its brief and in its remarks here today, the BLM has not asserted a single error in the trial of this mammoth case. And with respect to all findings of fact by Judge Windmill, which were laid out in a 128-page decision, they've not challenged a single factual finding, not a single one. And so what they have done is they've raised two jurisdictional challenges, actually three if you count the later filed administrative claims in 03 and 04, and these two challenges relate to the statute of limitations and also to discretionary function. And given the Court's interest in the statute of limitations, I'd like to address that first, if I might. First of all, this Court has already held in Raddatz the technicalities and formalities do matter. The date of receipt, the actuality of receipt, do not matter. The Court has already ruled that. Counsel has made a lot of comments about, well, it was Pitney Bold at August 5, and it was picked up by somebody on August 7, and so on. None of those things matter. The only thing that matters under the FTCA is whether or not it is sent by registered or certified mail. That is the only thing that matters. And if certified mail is simply a superfluous thing that can be kind of complied with in some circumstances, then the FTCA requirement of certified mail is itself superfluous, which is exactly what the District Court held. The District Court's findings in this case with respect to the statute are chided as only a four-page decision. But in fact, Judge Windmill had before him an extensive record, and the extensive record included the testimonies of not one, but three different postal experts, all of whom are in the record, on the plaintiff's side, saying that this wasn't certified mail because the technicalities of certified mail were not complied with. On the other side of the equation, there were people from the government who said, well, I think that it was certified mail because these technicalities don't really matter, and they don't divest the certified mailing of its status as valid certified mail. Now, Judge Windmill said these letters were sent by certified mail, and then he said that there needed to be notice of the date, and that wasn't complied with. So what do we make of what appears to be a finding, but not backed up, that this was sent certified mail? I think the only way to read that, Your Honor, is that the government claims they were sent by certified mail. It is clearly not a finding which Judge Windmill makes, as Your Honor also points out, because later on in the very same decision, he says that the requirements of certified mail were not met. Obviously, the motion to dismiss was denied, and then it was serially denied, and denied again in his final findings of fact after the trial was completed. So there's no question about Judge Windmill not thinking and holding that this was certified mail. He did not. He held the opposite. That's the result of his rulings, not just the first time, but the second and the third time out. So I think that's the answer to your question, Your Honor. Let me ask you this. Based on all the facts that were, you know, all the declarations, the envelopes, the little forms that were sent, if you were to take a look at all of that, why couldn't he conclude that these notices were sent by certified mail and they were mailed on the 5th? He could not, Your Honor, and the reason he could not, and his decision goes straight to the point, which is that under Marley, this court has held that because the FTCA statutory requirement is of the second category of jurisdictionals, that is, it's not meant to bar untimely claims. It's meant to, if I have the quote here, facilitate a broader system-related goal of facilitating administration of claims. And so what we have here is we have this dispute that is broiling, potentially, in front of Judge Windmill, where some postal experts are going to say it was, some postal experts are going to say it wasn't. Some people are going to say the Pitney Bowles was August 6th. We have to have mailroom employees come in and testify about, well, that's the time I mailed it. We have witnesses who would say that's not when it was available for pickup. And this whole thing becomes a big jurisdictional battle where competing mailroom clerks and postal service people- is to run on a certain date. Correct, Your Honor. The date of mailing. Yes. And that date cannot begin until, under the statute, the mailing has occurred by certified mail. It can't begin. It seems to me like he could listen to all of this and he could say, based on, you know, I infer, you know, I conclude, and I make a finding of fact that these notices were mailed on the 5th. Correct. By certified mail. Therefore, under the statute, the limitations period begins to run on the 5th. You've got six months to file. You filed on the 6th, whatever month that was. I forget, August 6th or whatever it was. You're late one day. You know, it would be, you know, unfortunate, but that's the rule. I mean, we said very clearly in Marley that the six-month period is fixed. Now, was your office the one that filed the complaint? Yes, ma'am. Yes. This is a little painful for you, I'm sure. Yes. I mean, I've not liked making this argument up through the proceedings. Pardon me? I said I've not liked making this argument up through the proceedings, sure. But I think the outcome will be, should be, not to presuppose the decision, but it should be exactly the same. Judge Mill could conclude, I gather, if he listened to the evidence, he could say, no, they weren't mailed on the 5th because they didn't comply with the requirements for certified mail. Right. And, therefore, the statute didn't begin to run, and there's no problem. Which he has already held, Your Honor. But we don't have a factual. There's not a clear factual record here. Well, what there is is there could be more jurisdictional findings. Judge Windmill went the way that we are urging this court to go, which is that under Marley and under Raddatz, if there is not a certified date of mailing, then it is not necessary for people to get into these battles about what the dates were. With a host of witnesses who were in the mail room, gave it to somebody else, and he gave it to someone else, which is basically a government's chain of custody type evidence. It looks like they were certified mail on the 5th. It looks that way, and you come back and say, oh, no, no, no. They didn't comply with the certified mail requirements. Therefore, they were not mailed on the 5th, and the statute didn't begin to run. So that's Judge Windmill. It looks like he made a legal ruling, but it looks like he may need to do some factual work. Your Honor, if I may, it's not the date they were mailed. It's the date they were mailed by certified mail. That's the argument. I understand. That is the argument. I have the statute right here in front of me. Yes, sir. And the point is on this is that if you do a regular certified mail, and what they have put into the record are the envelopes of both the Smith and the Ball brothers' claims, which were sent by using the familiar stick-on 3800 forms. They don't have anything on the 3877s. What they have is they have something that was dated by a BLM employee, never postmarked, never marked as certified mail, and never taken to the post office. Okay. And so if I may, that postmark is not optional for three reasons. One is under the postal regulations, if you choose both certified mail, a 3877 under the postal regs has to be taken to the post office. It has to. There's no other way to read the regulations. Number two, once it is taken to the post office, the post office must, and there's no discretion in this, they must postmark every single sheet of the Form 3877s. They have to do that. So the postal regulations are the only way in which this court can define certified mail. Once it's come into question, the court has to look somewhere, and there's only two sources. One is legislative history, which is principally what Judge Windmill relied upon in saying this has to be the requirement because it has to be either certified or registered mail. We know registered has to be postmarked. We know certified is kind of a cheaper version of registered mail, and so certified mail has to also be postmarked. Otherwise, one would have a system where the receipt is driving the decision about the date and type of mailing, and the receipts don't matter. So the Posting Council points out some language in the regulations suggesting that it's only if you want, it's optional if you want a return receipt. Do you disagree with that reading? I definitely disagree with that reading, Your Honor. I think that with respect to Form 3877s, there is absolutely no question, if you get into these postal regulations, which I have, 3877s have to be taken to the post office because the only place you can mail it any other way is to use a Form 3800, and my site to that is in the postal manual, the DMN, Paragraph 2.6. And in addition, I need to point out something that I think is equally important. This business about optionality, it was up to us to decide, cite the Court to two references, GER 371 and GER 413, which are Paragraph 3 in both references. These are the affidavits of the BLM person who was charged with mailing these things, and she stated in her declaration that she was instructed, quote, to make sure the letters were postmarked and mailed via certified mail, close quote. Paragraph 3 in both declarations. There was no optionality at all. This is something that the lawyers for the government have come up with to excuse the fact that it obviously wasn't certified mail because it has no indicia of that. A 3877 indicia of certified mail is the postmark because the post office has to mark it and return it to you in ink. That's what has to happen. And if they don't have that, what ensues is a big battle, which the district court said the congressional intent is obvious, that was his word, obvious that to avoid that and to trigger what Your Honor says is the jurisdictional date, we have to have a certified date of mailing by the certifying agency, which is the U.S. Postal Service. And once you have that, these questions are all resolved, and that comports with Marley, which says it's a facilitating statute of limitations, not an untimeliness one. You want to address the discretionary function? I would, Your Honor. Thank you very much. Discretionary function, I think, to say that this is a red herring, as counsel has posited, I think is vastly simplifying and understating the importance of the NEPA analysis. What the court decided in its findings of fact and conclusions of law is that the government was without discretion to act in this case because the challenged action, and there is no question that it was a major federal action under the statute, was the application of Allis-by-Helicopter in what the court said was a new and unprecedented use to tens of thousands of acres of burnt rangeland near Cropland. Now, in the 1991 EIS, as the court held and as the government has essentially conceded, they definitely conceded it below, they're trying to resurrect it a little bit now, Allis application to those territories was never considered at all. It was never on the list of chemicals that could be used for that purpose. So the thing that I was concerned about, so there's the 1991 EIS and they didn't match up rangeland and Allis. They considered Allis, they considered rangeland, but not together, as I read it. But then they went ahead and they did some EAs on some 17 parcels and they did this NEPA, we don't need to do anything more, no further environmental analysis is required on the rest. And so they did some form of NEPA review. That seemed under Berkovits to be, to fall into the category of, they did something, maybe that something was flawed, but in that case we say, well, is that flawed compliance itself discretionary? Why doesn't that language in Berkovits, the sort of type 2 claim, apply in this case? Your Honor, a type 2? Well, in Berkovits they say, well, if this is a claim that they didn't comply at all, then there was a mandatory duty that was missed. But if they say they complied but the compliance was flawed, then we have to look at whether the compliance itself is discretionary. The answer to that question, Your Honor, is that there is no evidence of compliance. Well, there's what I just said, the 1991 EIS, the EAs, we've looked into NEPA and we don't think any more environmental analysis is necessary. Now, we might say that's flawed and that, in fact, they were wrong in their analysis of NEPA. But why isn't that itself discretionary? Your Honor, the answer to that is that there's a difference between flawed and non-existent. Right, exactly. I agree with you. But why isn't this in the flawed category? The reason it is not is because the challenge to action was the application by aerial applications to these rangelands. And the 1991 EIS is silent completely on the subject of that proposed and challenged action. So they were wrong in their EAs and little whatever it was, semi-quasi-EA. Fire rehab plans. So they were wrong, but that just means that they failed in doing the correct NEPA compliance, perhaps, you know, if a court subsequently so determined. Yes, and I think if the court will look at paragraphs 38 and 48 of the findings of fact, which, again, as I stated, were not challenged by the government here, the judge makes a determination that there was just simply nothing up there to hook onto. There was nothing to tear back to because it was devoid. It was just empty. It was never addressed. It was never considered. It was never evaluated in any way, shape, or form. And he makes a specific finding that the EAs and the fire rehab plans could not tear back to those two documents and that, further, that there was no authority given to him and no evidence at the trial that the EAs or the fire rehab plans were ever intended to or could provide authority to use that chemical in and of themselves. He makes a specific finding to that. So to answer your question, Your Honor, why is it not flawed? Because it just wasn't existing. It had never been considered in any way, shape, or form in a flawed way or in a pristine way. Further, because the mandatory duty under NEPA was not complied with, all that means is that the government's discretionary function challenge fails because it does not satisfy prong one. A lot of discussion, particularly with respect to Bailey and Green and other cases that I know Your Honor is familiar with, those decisions are all prong two cases. I don't have a lot of time to talk about that other than to say that, again, in paragraph 471 of the conclusions and findings, which reference back to findings, Judge Windmill makes a specific finding that this was a scientific or technical type of choice of efficacies. There was no decision based upon competing safety concerns. Now, in the briefing, they say, well, this is just like those cases like Bailey where there's competing safety concerns and so this is what that was. That was never tried. There's no evidence to that. The government can't point to any evidence because it simply was not brought to the court's attention. That's why he can make the finding in paragraph 471 that he did. I see my time has expired. Thank you very much. Thank you. Give the government one minute. I will adhere to that carefully. Just two quick questions. First, on the certified mail issue, I mean, counsel is just wrong. Every single one of these letters that was mailed was marked certified mail. We have in the record at page 448 the return receipt for the letter to plaintiff's counsel signed by plaintiff's representatives with the box certified mail checked. I mean, every one of these was sent by certified mail. If it's not certified mail, I don't know what it is. You seem to make the statement that each was marked certified mail on the envelope.  Is that right? Yes, that is correct, Your Honor. That is correct. So if I see an envelope delivered to X, it will say certified mail? Yes, it will have the unique identifier number on it, which is how certified mail is tracked in the postal system. So I thought that it had just, you know, the card. It's like a green card. Yeah, and part of that is then when you fill it out, it's taped to the envelope. And that's what you're talking about in the answer to Judge Fletcher? Yes, and if there is a – when you send something by certified mail, even using Form 3877, the letters are marked. That's the whole point of certified mail is that the mail in the postal system has a unique identifier number that first-class mail does not, for example. My understanding is when you're doing bulk mail, they don't put on this little green slip on each one. They don't put the same green slip on, but they still mark the letters as certified mail, Your Honor. That's how they're recognized in the postal system as certified mail. You're saying that there was a number on there, but does it say certified mail number such and such? I believe it says the word certified mail on it. I mean, this doesn't affect whether they were in fact certified mail, but if counsel represents that they were not marked certified mail, they were, I believe. The postmark, is that stamped on the envelope, or is it stamped on the little green card? And this is an important question I want to clarify. It is, of course, ordinary to send things by metered mail. The post office never puts its own postmark on it. It's sent by metered mail where you're authorized to do that under permit. Every one of these things had a metered mail postmark dated August 5, 2002. Now, when plaintiffs talk about a round-stamped postmark from the post office, what they're referring to is if you want, for your own records, to have a receipt showing that you could come in and say, I have the post office's validation that I mailed it on this day, you're allowed to go to the postal service and put that mark on it. If you look at page 448 of the excerpts of record, there's an example of a Form 3800, and one of the little pieces of precaution instructions on it says, if you would like to have a postmark date on this receipt, bring this to the post office counter. If you do not, simply detach. And Form 3877 is the same way. Regulation, and this is when plaintiffs' counsel says, you have to bring it to the post office or it's not certified mail. It's just untrue. This is Domestic Mail Manual, Section 503.336, which says, if you want this to be postmarked, to have a postmark on it for your receipt, then bring it to the post office. It doesn't say, if you don't, it's not certified mail. Very briefly on the discretionary function exception, the EIS did consider the use of oust on rangeland. It's in page 20 of our reply brief, cites the specific table where we did consider this, even if, though, you conclude that we didn't. The most that you get out of that is a conclusion that the government abused its discretion by not considering a particular risk. You don't get the conclusion that NEPA specifically prescribed a course of action for the agency employee to take in the conduct challenged as tortious. That is, NEPA did not tell us whether we could use oust or not. There's no question, since NEPA only applies to discretionary government choices, the outcome of a NEPA ruling, whichever way, it may be that you abused your discretion or you didn't, but it's not that you had no discretion in the first place. And to prevail here, to get a tort for what is in effect a NEPA violation, plaintiffs have to show that we had no discretion at all in whether to use oust, and that's just untrue. All right. Thank you. Okay. Let's see. Good morning, Your Honors. May it please the Court. My name is Leonard Feldman. I'm counsel for DuPont. I'd like to reserve four minutes for rebuttal, but I'll keep track of my own time. As we note in our briefs, DuPont was held liable in this case.
judges: Fletcher B. , Paez, Ikuta